[No. 5375–1.   Division One.   August 3, 1978.]

AMELCO ELECTRIC, *Respondent,* v. DONALD M. DRAKE COMPANY, ET AL, *Appellants.*

*Oles, Morrison, Rinker, Pickel, Stanislaw & Ashbaugh, Bruce T. Rinker,* and *Gregory S. Petrie,* for appellants.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for respondent.

FARRIS, C.J.—Donald M. Drake Company, Travelers Indemnity Company, and the Phoenix Insurance Company appeal from a judgment against them awarding $162,063 plus $5,500 for attorney's fees to Amelco Electric, a subsidiary of Amelco Corporation.

Drake was the original prime contractor for the construction of the King County Multipurpose Stadium, and Travelers and Phoenix were sureties on Drake's statutory payment bond. Drake entered into a subcontract with Amelco, by the terms of which Amelco agreed to perform certain electrical work for a lump sum price of $1,360,000 to be paid according to a "critical path method" schedule.

Amelco procured material and carried on work pursuant to the subcontract until November 30, 1974.

On December 10, 1974, King County terminated its contract with Drake claiming that Drake was in default. (That matter is currently being litigated in Federal court.) Drake, in turn, terminated the subcontract with Amelco by a letter dated December 13, 1974. The subcontract provides in paragraph 7(c):

CONTRACT CANCELLATION: If the Contract between Owner and Contractor is cancelled in whole or in part through no fault of Contractor this Subcontract may be cancelled by Contractor in whole or in part without liability for damages and Contractor shall be liable to Subcontractor only for the reasonable value of Subcontractor's work completed to the extent that Contractor has received payment for said work from Owner.

Exhibit 1. The trial court found:

The provision in Paragraph 7(c) of the subcontract relative to payment to the subcontractor to the extent that the contractor had received payment for the work from the owner related to the time of payment rather than entitlement and had the effect of postponing the prime contractor's obligation to pay for such reasonable time as should have permitted the prime contractor to receive payment in the ordinary course from the owner, but such reasonable time has expired.

Finding of fact No. 19.

Under the provisions of Paragraph 7(c) of the subcontract, Amelco Electric is entitled to be paid the reasonable value of the subcontractor's work completed to the time of termination and reasonable value includes actual cost plus a reasonable amount for overhead and profit.

Finding of fact No. 20. The actual cost of performance by Amelco under the subcontract was $930,316. The court found that 15 percent of cost, or $139,547, was a reasonable amount for overhead and profit. For materials furnished and work done prior to November 30, 1974, Amelco was paid $810,052 by Drake and $12,500 by King County. An additional sum of $85,248 was recovered as retainage from

Drake, Travelers and Phoenix. Thus, the balance due to Amelco was found to be $162,063.

This appeal raises two issues: (1) whether payment by King County to Drake is a condition precedent to Drake's liability to Amelco under paragraph 7(c) of the subcontract, and (2) whether recovery under paragraph 7(c) is limited to a proportion of the contract price reflecting the amount of progress made toward completion of the work.

The trial court held that the provision for payment to the subcontractor "to the extent that Contractor has received payment . . . from Owner" was designed only to delay payment for a reasonable time and did not otherwise affect the obligation to pay as provided in the subcontract. Drake contends that the provision shifted to the subcontractor the risk of the owner's failure to pay and that until the question of fault is decided in Federal court and judgment is paid, there is no debt under paragraph 7(c).

The role of the court is to ascertain the mutual intent of the contracting parties and to give effect to their intent. *Jones v. Hollingsworth,* 88 Wn.2d 322, 560 P.2d 348 (1977); *Seattle–First Nat'l Bank v. Hawk,* 17 Wn. App. 251, 562 P.2d 260 (1977). When the language of a contract is susceptible of only one meaning, the court will not look beyond the four corners of the written instrument. *Jones v. Hollingsworth, supra.* When, however, the terms of a contract are ambiguous, the court must search out the intent of the parties by considering the subject matter and objective of the contract, the circumstances surrounding its making, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the respective interpretations advocated by the parties. *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 510 P.2d 221 (1973). That paragraph 7(c) is susceptible of more than one meaning is demonstrated by the split on the question among jurisdictions which have considered similar provisions.[1] We must, there-

---

[1] The vast majority have interpreted such a clause as merely fixing the time for payment and not as creating a condition precedent to payment. *See Riley Constr. Co. v. Schillmoeller & Krofl Co.,* 70 Wis. 2d 900, 236 N.W.2d 195 (1975).

fore, examine all the facts and circumstances surrounding the transaction.

Amelco contracted solely with Drake and did not accept responsibility for any part of the building project other than the electrical work. There was never a direct relationship established between Amelco and King County, the owner. Amelco made normal progress toward completion of its contract obligations until the contract was cancelled. To construe paragraph 7(c) as Drake now urges is to require the subcontractor to wait to be paid for an indefinite period of time until the prime contractor has been paid by the owner, which may never occur. Viewing the terms of the subcontract in light of the situation of the parties, the end which they sought to accomplish, and the customary practices in the industry, such a construction is patently unreasonable and does not reflect the intent of the parties. *See Thomas J. Dyer Co. v. Bishop Int'l Eng'r Co.*, 303 F.2d 655 (6th Cir. 1962) and *Howard–Green Elec. Co. v. Chaney & James Constr. Co.*, 12 N.C. App. 63, 182 S.E.2d 601 (1971). We hold that paragraph 7(c) of the subcontract did not create a condition precedent by which Amelco's right to receive payment for work completed was dependent upon Drake first being paid by King County. Rather, it postponed payment for a reasonable period of time after the work was completed, during which Drake was afforded an opportunity to obtain from King County the funds necessary to pay Amelco. The trial court could properly find that such reasonable time had expired.

The other disputed clause in paragraph 7(c) is: "the reasonable value of Subcontractor's work completed." We hold that the term "reasonable value" implies that liability shall be based on the doctrine of quantum meruit and not, as Drake argues, on the contract price or a fraction thereof. *See Oberosler v. Way Station Restaurant & Lounge, Inc.*, 521 P.2d 184 (Colo. Ct. App. 1974). It is well settled that when quantum meruit is the theory of recovery, a reasonable profit should be included in the measure of

damages. *King v. Clodfelter*, 10 Wn. App. 514, 518 P.2d 206 (1974). Amelco introduced substantial evidence to show that 15 percent of cost was a reasonable amount for overhead and profit. The award arrived at by the trial court was within the range of the evidence; we find no basis for overturning the assessment of damages. *See V.C. Edwards Contracting Co. v. Port of Tacoma,* 83 Wn.2d 7, 514 P.2d 1381 (1973).

Affirmed.

JAMES and DORE, JJ., concur.

Reconsideration denied October 17, 1978.

Review denied by Supreme Court March 2, 1979.