INVESTMENT SERVICE CO., a corporation, Appellant,

v.

James H. ROPER and Donald E. Westfall, Appellees.

No. 76–2706.

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1978.

---

Richard M. Botteri, Cleveland C. Cory, argued, Portland, Or., for appellant.

Richard K. Smith, Burley, Idaho, for appellees.

Before KILKENNY, GOODWIN and KENNEDY, Circuit Judges.

GOODWIN, Circuit Judge:

The sole issue in this case is whether the officers and principal stockholders of a corporation who signed a guaranty for a corporate debt are liable on that guaranty.

The defendants, Roper and Westfall, controlled an Idaho corporation, TDM. TDM negotiated a distributorship agreement with SMC, an Oregon corporation that manufactured snowmobile carriers. A proposed contract was drafted by SMC and sent to Roper and Westfall, who signed the document, both as individuals and as representatives of TDM. The document recited that Roper and Westfall intended to be personally liable for the debt.

The writing that Roper and Westfall signed provided that it would take effect upon its execution by both parties. When it was returned to SMC, however, no one from SMC signed it. SMC then delivered conforming goods, but was not paid. SMC then sued TDM, Roper, and Westfall for breach of contract, in the United States District Court for the District of Oregon. The court declared that it did not have in personam jurisdiction over Roper and Westfall, however, and the suit proceeded only against TDM.

Because of the failure of SMC to execute the proposed contract, the district court instructed the jury that as a matter of sales law, under Section 2–207(3) of the Uniform Commercial Code, the document signed by Roper and Westfall was not in itself a binding agreement, but it could be considered as evidence of a contract between the parties. The jury returned a substantial verdict for SMC, and the court entered judgment on the verdict.

The corporate defendant did not pay the judgment, and it was assigned to the present plaintiff for collection. Plaintiff brought this diversity action against Roper and Westfall in the United States District Court for the District of Idaho. Roper and Westfall moved for summary judgment, contending among other things that their undertaking as guarantors had been conditioned upon the existence of a binding contract, which they now claim never came into existence because SMC failed to sign the memorandum of it. The trial court agreed in substance, and entered summary judgment for Roper and Westfall.

Both sides have argued that collateral estoppel dictates the result of this case. Roper and Westfall contend that the Oregon court's ruling that the written contract was not binding wipes out the guaranty. They argue that the guaranty fails, as a matter of law, with the failure of the written sales agreement to become a binding contract. On the other hand, the plaintiff argues that because the court awarded contract damages and attorney's fees to SMC in the Oregon litigation, all of the terms of the writing, including the signed guaranty, become binding on Roper and Westfall as a matter of law.

Both parties interpret collateral estoppel too broadly. That doctrine precludes parties to prior lawsuits, and their privies, from relitigating issues conclusively decided in the earlier suits. For an issue to be precluded in a second action, it must have been raised, litigated, and decided, and its determination must have been essential to the first judgment. See 1B Moore's Federal Practice ¶ 0.443[1].

In the Oregon case, the court ruled that the writing executed by Roper and Westfall was not a binding contract because it was not executed by SMC. The jury, so

instructed, returned a verdict for SMC, thus deciding that, pursuant to the relaxed contract-formation principles of the UCC, there was an unwritten contract for the sale of goods between the parties.[1]

The court in Oregon awarded attorney's fees to SMC. Oregon law ordinarily does not allow award of attorney's fees in the absence of an agreement to that effect. SMC argues that the Oregon court must therefore have found the written document, which contained a provision for attorney's fees, to be a valid contract. Defendants say that the agreement which permitted the award of fees was a pretrial stipulation between the parties, and not the clause in the document.

But which agreement the Oregon court relied on in awarding attorney's fees has no collateral impact on this case. Neither the judge nor the jury in the Oregon action considered the liability of Roper and Westfall. The court had no jurisdiction over them, and their liability, if any, was never litigated. The Oregon court decided only the issue of a contract for the sale of goods between the corporations. It made no ruling on the existence of a guaranty provision, as it was not called upon to do so.

If Roper and Westfall had been joined as parties, the question could have been considered and decided. Liability on the guaranty would have been consistent with the Oregon judgment against TDM, but exoneration of the guarantors would have been equally consistent, on the theory that the personal guaranties were conditioned on the execution of the writing by SMC and its agents. However, it was not necessary to the judgment on the sales agreement in the Oregon case to determine any rights or liabilities on the alleged guaranty. Accordingly, the trial court in this Idaho action correctly rejected the collateral estoppel arguments of both sides.

■ The trial court in the present case ruled that the written agreement of guaranty by Roper and Westfall was tied inextricably to the rest of the written sales agreement, which was not to take effect until its execution by SMC. But this ruling does not dispose of the case against Roper and Westfall. For even if there was no express, written contract of guaranty, there may still have been an oral or implied-in-fact contract of guaranty. Just as Section 2–207(3) of the Uniform Commercial Code permits a court to find a contract for the sale of goods as the result of conduct of the parties, the court can also find other types of contracts implied from the intent and conduct of the parties.[2]

■ We realize that courts interpret guaranty contracts narrowly. *See, e. g., Rizal Commercial Banking Corp. v. Putnam,* 429 F.2d 1112 (9th Cir. 1970) (construing contract to find no consent by guarantor to granting of extension of time to principal debtor). In addition, the Statute of Frauds includes guaranty contracts among those that must be memorialized by a writing signed by the party to be charged. The rationale for these safeguards is that since the guarantor ordinarily receives no direct benefit for his or her promise, the guaranty should be clear and unequivocal. *See* 3 Williston, Contracts § 452 (3d ed. 1960). This does not mean, however, that there cannot be an implied-in-fact contract of guaranty.

■ In a recent case involving the assignment of a guaranty, the Oregon Su-

---

**1.** Roper and Westfall may have been in privity with TDM in the Oregon district court case for collateral estoppel purposes. If, on remand, privity is found, then Roper and Westfall are estopped in this case from arguing that there was no contract for the sale of goods between TDM and SMC. By the same token, Investment Service Co. would appear to be estopped, because of privity with SMC, from arguing that the writing signed by Roper and Westfall was a binding contract. See generally 1B Moore's Federal Practice ¶ 0.411.

**2.** An interesting question is whether Section 2–207(3), or any other section of Article 2 of the Uniform Commercial Code, applies to the alleged guaranty. Article 2, by its terms, applies to "transactions in goods"; whether guaranties on contracts for the sale of goods are part of such "transactions" need not be decided here. We remand because the trial court did not consider the possibility of guaranty contract under either UCC 2–207(3) *or* common-law doctrines of contract formation. We leave the question of the applicability of the UCC for the trial court.

preme Court rejected a narrow adherence to the terms of a written guaranty contract and held that the intent of the parties governed their obligations. *Progress Quarries, Inc. v. Lewis,* 281 Or. 441, 575 P.2d 158 (1978).[3] Moreover, in the instant case, the parties to be charged (Roper and Westfall) signed the sales and guaranty document, thus at least arguably complying with the Statute of Frauds. In any event, delivery of the goods by SMC in reliance on the guaranty (an alleged reliance that we must assume as true on summary judgment) would take the guaranty outside the statute under Oregon law. *Meader v. Orbit Inn Corp.,* 276 Or. 921, 556 P.2d 1365 (1976) (per curiam). The purposes of the common-law rule requiring a writing are satisfied by the facts in this case, and we believe the Oregon courts would consider a theory of implied contract in deciding the validity of the guaranty.

■ Roper and Westfall allege that they did not intend to be bound personally until the sales agreement and reciprocal personal guaranties were signed by the principals of SMC. The plaintiff argues that SMC delivered the goods to TDM only because it understood Roper and Westfall to have committed themselves to be bound personally. Determining the rights and liabilities of the parties in this situation requires the court to look beyond the pleadings and the written documents. The court must consider the possibility that an implied guaranty contract existed. As was necessary in the Oregon case, resolution of the question will require a finder of facts to examine the intents of the parties, and the ways in which reasonable parties could interpret their actions.

Reversed and remanded.

**3.** While appellant cites Oregon law in its brief, neither party has addressed the question whether Oregon or Idaho contract law applies in determining the validity of the alleged guaranty. It would appear that the court below should apply the Idaho conflict-of-law rules for contract formation issues. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The traditional conflicts rule is that the law of the place in which the contract was made controls. *E. g., Arsham v. Banci,* 511 F.2d 1108 (6th Cir. 1975). Neither party having argued or briefed the legal or factual questions involved, we cannot resolve on the record before us the issue of which state's law applies. But, since the plaintiff has a viable theory under Oregon law (and perhaps under Idaho law), a remand is necessary.