822 P.2d 558

**HOFF COMPANIES, INC., dba Hoff Building Center, an Idaho corporation, Plaintiff–Appellant,**

v.

**Robert DANNER, Defendant– Respondent.**

**No. 18880.**

Court of Appeals of Idaho.

Nov. 27, 1991.

Petition for Review Denied Jan. 24, 1992.

40

Wishney & Elgee, Boise, for plaintiff-appellant. Robert J. Elgee, argued.

Risch, Goss, Insinger & Salladay, Boise, for defendant-respondent. R. John Insinger, argued.

WALTERS, Chief Judge.

Hoff Companies, Inc., (Hoff), a building supplies company, brought an action to collect $2,652.81, plus finance charges, owing on a contract for building materials it delivered to Robert Danner (Danner), a building contractor. The magistrate found that the parties, through their conduct, had agreed that Danner's obligation to pay Hoff was subject to the condition that he first receive payment from Bruce Brink, (Brink), the party with whom Danner had contracted to construct several buildings. However, Brink failed to pay for the materials, and ultimately filed for bankruptcy. Upon these findings, the magistrate entered judgment for Danner. Hoff appealed to the district court, which affirmed the judgment. Appealing further, Hoff asks that we determine whether the district court erred in upholding the magistrate's decision. We affirm.

I

The following facts, found by the magistrate, are supported by the record. Hoff operates a lumber and building supplies

business under the name of Hoff Building Center, in Meridian, Idaho. Danner had contracted with Brink to construct some buildings in Stanley, Idaho. After Danner had commenced the project, however, Brink's unreliable financial circumstances caused construction to stop. When it appeared Brink would obtain a loan to complete the project, Danner agreed to continue with the construction, but required that Brink pay for all materials at the time they were delivered to the job site. Aside from the transaction at issue in this case and one other, Brink paid all suppliers in accordance with this arrangement.

In November, 1984, Danner placed an order with Hoff for materials to be used on the Brink project. Danner spoke directly with one of Hoff's managers and explained his concern pertaining to Brink's financial instability. Danner specifically requested that the invoices be "priced out"[1] at the time of delivery so that he could immediately obtain payment from Brink, who would be present when the materials arrived. On November 15, 1984, Hoff's driver arrived at the job site to deliver the materials. However, the invoices were not "priced out" but contained only the description and quantity of the materials delivered. Danner refused to allow the driver to unload the truck and immediately telephoned Hoff. Danner requested the prices over the telephone but Hoff's manager told him the office was too busy at that time to complete the invoices. Danner pressed Hoff for the information, and declared he would "collect for it now or else I won't stand responsible for it." Danner suggested returning the unloaded truck to Meridian, but Hoff told him, "You're being paranoid." Hoff then told Danner, "Go ahead and unload it and get the truck back, we're real busy and need it in the yard." Following this conversation, Danner permitted the driver to unload the truck, signed the invoices and used the materials in the Brink project. Hoff mailed completed invoices to Danner at the time of the next monthly billing.

In December, Danner met with Brink to go over the amounts owed on the project. Brink gave Danner money to be applied to certain costs, directing him to pay $1,140.69 for the materials from Hoff. Danner paid Hoff that amount, leaving a balance of $3,000. In January, Danner brought Brink to meet with Hoff and informed Brink of the potential materialman's lien that could be filed against his property. At the conclusion of that meeting, Brink handed Hoff $300 cash towards the account. For reasons undisclosed by the record, Hoff allowed its lien rights to elapse.

After the Brink project, Danner continued to do business with Hoff on credit for approximately two years, purchasing and paying for over $15,000 in building materials. Danner attempted to segregate these purchases from those made for the Brink project, and made payments sufficient to cover only the non-Brink purchases. Eventually, Hoff recorded the Brink charges as a separate account.

Brink made no further payments for the materials and ultimately filed for bankruptcy. Hoff brought this action against Danner, seeking to recover $2,652.81 for the materials, plus finance charges, owing on the Brink account. Following a bench trial, the magistrate found that the parties, through their language and conduct, had agreed that Danner's obligation to pay Hoff would be conditioned on Danner first obtaining payment from Brink, and thus Danner's obligation never matured. Accordingly, the magistrate entered judgment in favor of Danner. Hoff appealed to the district court, which affirmed the judgment.

On appeal, Hoff contends that the magistrate erroneously failed to apply the statute of frauds and parol evidence rule contained in the Uniform Commercial Code. Hoff also argues that the evidence of the parties' conduct was insufficient to give rise to an agreement creating a condition precedent. Further, Hoff avers that even if the contract included a condition precedent, that condition was either satisfied

---

1. The request that the invoices be "priced out" means that they not only describe the materials delivered but also list their prices and the total amount due.

when Brink paid Danner enough to discharge the Hoff account, or it was waived as a consequence of Danner's failure to use reasonable efforts to collect from Brink. We address these issues in turn.

## II

▮ Preliminarily, we note the applicable standards of review. When a district court sits as an appellate court for the purpose of reviewing a magistrate's judgment, the district court is required to determine whether there is substantial evidence to support the magistrate's findings of fact. If those findings are so supported, and if the conclusions of law demonstrate proper application of legal principles to the facts found, then the district court will affirm the magistrate's judgment. The judgment also will be upheld on further appeal. *Shurtliff v. Shurtliff*, 112 Idaho 1031, 739 P.2d 330 (1987); *Ustick v. Ustick*, 104 Idaho 215, 657 P.2d 1083 (Ct.App.1983). Where, as here, the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, the appellate court will review the trial record with due regard for, but independently from, the district court's decision. *McNelis v. McNelis*, 119 Idaho 349, 806 P.2d 442 (1991).

▮ This case involves a transaction in goods and clearly falls within the purview of Article II of the Uniform Commercial Code, (the Code), as adopted in Idaho. *See* I.C. § 28-2-102.[2] Contrary to the conclusions reached by the lower courts, the fact that the transaction was simple,[3] or that the dispute concerned the failure to tender specified documents rather than a failure to deliver conforming goods,[4] do not exempt this case from the Code's provisions. Rather, the Code specifically provides that where parties agree that tender requires

the seller to deliver documents, the seller must tender all such documents in correct form. I.C. §§ 28-2-503(1), (5). Further, tender of delivery is a condition to the buyer's duty to accept goods and to his duty to pay for them. I.C. §§ 28-2-106(2), 28-2-507(1), 28-2-601.

▮ Where, as here, the lower court has applied an improper legal theory but arrived at the correct result, we will use the correct legal theory to affirm the judgment. *See Department of Health and Welfare v. Engelbert*, 114 Idaho 89, 753 P.2d 825 (1988). As explained below, applying the relevant Code provisions to the facts found by the magistrate does not alter the outcome of this case on appeal.

## III

Hoff maintains that the implied agreement, found by the magistrate to add a condition precedent, fails to meet the formal requirements of the statute of frauds and violates the parol evidence rule. As a consequence of these shortcomings, Hoff argues, the magistrate should not have given effect to the condition when construing the parties' contract.

### A. The statute of frauds.

▮ We turn first to Hoff's argument that the Code's statute of frauds renders unenforceable the implied agreement creating the condition. To be enforceable, contracts for the sale of goods for the price of $500 or more must be in writing. I.C. § 28-2-201. We observe that the purpose of this requirement is to afford a basis for believing that the offered extrinsic evidence is based on a real transaction. I.C. § 28-2-201 official comment 1. Thus, the Code provides that, "a contract which is

---

2. "Unless the context otherwise requires, this chapter applies to transactions in goods."

3. In its written findings and conclusions, the magistrate concluded, "Although the plaintiff has cited several provisions of the Uniform Commercial Code regarding the sale of goods, I believe this case turns on a simple analysis and factual determination of the substance of the parties' agreement...."

4. In its first memorandum opinion, the district court stated, "Neither do the U.C.C. provisions on sales apply. There is no indication that the 'goods' did not conform to the contract, or that there was any reason to reject the 'goods.' The only defects alleged were in the documentation...."

valid in other respects is enforceable with respect to goods which have been received and accepted." I.C. § 28–2–201(3)(c); *see Keller Lorenz Co. v. Insurance Assocs. Corp.*, 98 Idaho 678, 570 P.2d 1366 (1977). Under that subsection, receipt and acceptance of the goods is deemed to constitute an unambiguous overt admission by both parties that a contract actually exists, and makes admissible oral evidence of other terms of the contract. *See* I.C. § 28–2–201 official comment 2.

The record establishes that the contract price exceeded $500 and therefore was subject to the statute of frauds. Under the facts found by the magistrate, the statute was satisfied when Danner "received" the materials and subsequently "accepted" them, either by using the materials inconsistently with Hoff's ownership or by failing to effectively reject them. *See* I.C. §§ 28–2–103(1)(c), 28–2–606(1)(b), (c). Hoff maintains, however, that the written invoices, containing the essential contract terms [5] and signed by Danner, constitute a memoranda sufficient to meet the statute of frauds requirements as to the parties' original contract. Hoff contends that because the original agreement complies with the statute's writing requirement, any agreement modifying that contract's terms also must satisfy the writing requirement in order to be enforceable. We disagree.

Idaho Code section 28–2–209(3) states, "[t]he requirements of the statute of frauds must be satisfied if the contract as modified is within its provisions." Under the "receipt and acceptance" exception to the statute, a modified contract may be enforced to the extent of the goods that have been accepted. *See* I.C. § 28–2–209 official comment 3; *see also* WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 1–5, at 45 (2d ed. 1980). Thus, whether the implied agreement is viewed as modifying the terms of the parties' initial contract, or as an agreement to terminate the initial contract and create a new,

"original" contract, its enforcement is not barred by the statute of frauds.

### B. The parol evidence rule.

Next, we address Hoff's assertion that the invoices signed by Danner immediately following his conversation with Hoff precluded consideration of the parties' implied agreement to add a precondition. The preprinted invoice forms, introduced as exhibits at trial, contain language stating: "Terms of sale. Charge accounts are due the first of the month following delivery and payable by the 10th." In front of Danner's signature are the printed words "Terms agreed to and rec'd by." Hoff submits that this writing should be construed as the final written expression of the parties' agreement, and that the magistrate erred in giving effect to the condition precedent, which is contradictory to the term in writing.

The parol evidence rule, codified at I.C. § 28–2–202, states that:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing *intended by the parties as a final expression of their agreement with respect to such terms* as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented....

(Emphasis added.) Thus, only if the writing is determined to be the final written expression of the parties' agreement does the parol evidence rule apply to exclude evidence of conflicting or additional terms. *See* WHITE & SUMMERS, § 2–10, at 81.

We note that a writing may inaccurately state the intentions of the parties, and its language will not create an agreement that previously did not exist. *D.R. Curtis Co. v. Mason*, 103 Idaho 476, 649 P.2d 1232 (Ct.App.1982). Moreover, the trial court's task is to give effect to agreements in accordance with the parties' intentions, even when the forms employed suggest

---

**5.** The absence of the contract price is not fatal to the formation of an enforceable contract.

*See* I.C. § 28–2–305.

otherwise. *Jeff D. v. Andrus,* 899 F.2d 753, 760 (9th Cir.1989); *Interform v. Mitchell,* 575 F.2d 1270, 1276 (9th Cir.1978). Whether the parties intended the writing as the final expression of their agreement, and whether the additional terms sought to be proved are contradictory, are questions for the court. *See* WHITE & SUMMERS, *supra,* at § 2–9. If the court determines that the parties did not intend the writing to be the final expression of their agreement, it may, as trier of fact, find from extrinsic evidence that the parties agreed to terms different from those contained in the writing. *See* J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 19–27, at 714 (1977). *See also Jeff D.,* 899 F.2d at 760.

The magistrate's memorandum decision contains no explicit finding as to whether the parties intended the invoices to be the final expression of their agreement. However, in view of the magistrate's finding that the parties *in fact* agreed to make Danner's obligation subject to a condition— a term inconsistent with the written term contained in the invoice requiring payment on the tenth day of the month following delivery—we can infer no other finding than that the writing was *not* intended by the parties as the final expression of the agreed upon terms. Rather the evidence suggests Danner signed the invoices to verify receipt of the materials, a practice required by Hoff. Accordingly, we find no error in the magistrate's decision to consider extrinsic evidence to determine the terms of the parties' agreement.

## IV

Hoff further claims that, having accepted the goods, Danner is required under the provisions of the Code to pay for them. Idaho Code § 28–2–607(1) states that "[t]he buyer must pay at the contract rate for any goods accepted." However, the Code also expressly permits the effect of its provisions to be varied by agreement. *See* I.C. § 28–2–102(3). In this case, the magistrate determined there was such an agreement. Specifically, the magistrate found that the parties' conduct gave rise to an implied agreement that Danner's obligation to pay Hoff was conditioned upon Danner first collecting payment from Brink. Therefore, the next step in our analysis is to determine whether the record adequately supports this finding.

### A. Ascertaining the terms of the agreement.

■ Hoff does not contest the existence of the parties' initial contract, which provided that Hoff would deliver building materials with priced-out invoices and that Danner would pay the contract price. Instead, Hoff attacks the magistrate's finding that there existed a second agreement, subsequent to Hoff's defective tender, to create a condition precedent to Danner's duty to pay. A condition precedent is defined as an event not certain to occur, but which must occur before performance under a contract becomes due and may be implied in fact from the conduct of the parties, or may be implied in law. *World Wide Lease, Inc. v. Woodworth,* 111 Idaho 880, 728 P.2d 769 (Ct.App.1986). Whether a contractual obligation is subject to a condition precedent depends upon the intent of the parties and may be shown by clear implication. *McMinn v. Holley,* 86 Idaho 186, 384 P.2d 229 (1963); *World Wide Lease, Inc.,* 111 Idaho at 888, 728 P.2d at 777.

Contracting parties may, by agreement, modify the terms of their contract, or terminate the original contract and create a new one. I.C. §§ 28–2–210(1), 28–2–106(3). An "agreement" is defined as the bargain of the parties in fact as found in their language or by implication from other circumstances, including the parties' conduct. I.C. §§ 28–1–201(3), 28–2–204(1). *See Investment Servs. Co. v. Roper,* 588 F.2d 764 (9th Cir.1978). *See also* I.C. § 28–2–207 (an expression of acceptance containing terms different from those agreed upon is to be construed as a proposal to add such terms to the contract, which, if materially altering the contract, become binding if assented to). Where the existence of an agreement depends on the credibility of extrinsic evidence or on a choice among

reasonable inferences to be drawn from such evidence, it is to be determined by the trier of fact, whose findings we will not disturb on appeal absent a showing of clear error. I.R.C.P. 52(a); *USA Fertilizer, Inc. v. Idaho First Nat'l Bank,* 120 Idaho 271, 815 P.2d 469 (Ct.App.1991); *Jensen v. Westberg,* 109 Idaho 379, 707 P.2d 490 (Ct. App.1985).

■ At the onset of the parties' transaction, Danner informed Hoff that Brink presented a risk of non-payment, and Hoff agreed to provide "priced-out" invoices at delivery in order to allow Danner to immediately obtain payment from Brink. However, Hoff failed to properly tender the goods by delivering them without the requisite priced-out invoices. Danner, consistent with his contractual and statutory rights,[6] refused to accept Hoff's delivery and immediately notified Hoff of its nonconforming tender. Danner requested the prices over the telephone and asserted that he would not be responsible without them. Hoff was too busy to provide the information, however, and told Danner he was "being paranoid." Hoff also needed the truck and driver returned immediately to Meridian. Ultimately, Hoff told Danner to go ahead and unload the materials without the pricing information. Danner then unloaded the truck and used the materials in the Brink project, thereby giving up his right to later reject them.[7]

Based upon this conduct, and from the surrounding circumstances, the magistrate reasonably could construe Danner's unequivocal refusal to be responsible without the pricing information, followed by Hoff's authorization to unload the materials, as Hoff's assent, or acquiescence, to Danner's proposed new terms, *i.e.,* that Danner would not be liable if he could not collect from Brink. Additionally, Hoff's statement that Danner was acting "paranoid" suggests that, despite Danner's concerns, Hoff did not perceive Brink to present a serious financial risk, and was willing to bear the risk itself if Danner accepted its tender. Moreover, Hoff recognized that in the event collection was not made, it could rely upon its lien rights against Brink's real property. Finally, the magistrate found that the parties' subsequent conduct concerning Danner's account with Hoff was consistent with a finding that Danner's responsibility for the Brink purchases was distinct from his other obligations to Hoff and subject to a condition. Accordingly, we affirm the magistrate's finding of an implied agreement creating a condition precedent to Danner's duty to pay Hoff.

Hoff challenges this finding, averring that the parties' conduct was "far too ambiguous" to imply an agreement. Hoff asserts that, because there was no evidence that it explicitly told Danner to *use* the materials it unloaded, Danner's subsequent unauthorized use of them constituted a unilateral act on Danner's part and was insufficient to bind Hoff in anyway. We disagree.

The evidence in the record supporting the parties' mutual understanding that Danner would use the materials is strong. Neither party at any time attempted to have the materials returned to Hoff. Moreover, unless there was *some* agreement that Danner accept the materials without the pricing information, Hoff's failure to timely cure the defective tender would have rendered Hoff in breach of the original contract and liable to Danner for damages. Hoff's total inaction in this regard is inconsistent with its contrary assertion that it did not intend for Danner to use the materials it delivered. Accordingly, its argument is rejected.

---

**6.** Tender of delivery is a condition to the buyer's duty to accept goods and, unless otherwise agreed, to his duty to pay for them. I.C. § 28-2-507(1). Where the goods *or the tender of delivery* fail in any respect to conform to the contract, the buyer may, at his election, reject the tendered goods or accept them. I.C. § 28-2-601.

**7.** Acceptance of delivered goods occurs when the buyer fails to effectively reject the goods, or when the buyer does any act inconsistent with the seller's ownership. I.C. §§ 28-2-103(1)(c), 28-2-606(1)(b). Acceptance of goods by the buyer precludes rejection of the goods accepted, and, if made with knowledge of the nonconformity, cannot be revoked because of it. I.C. § 28-2-607(2).

## B. Construing the conditional term.

Next, Hoff asserts that the magistrate erred in construing the parties' conduct in Danner's favor. Hoff cites the general reluctance by courts to find conditions precedent, *see World Wide Lease, Inc.*, 111 Idaho at 888, 728 P.2d at 777, and submits that under traditional contract principles, the conditional term purporting to limit Danner's liability must be strictly construed against him. *See Suitts v. First Sec. Bank of Idaho, N.A.*, 100 Idaho 555, 602 P.2d 53 (1979). Consequently, Hoff continues, the condition precedent should at most be read as term affecting only the time for payment.

First, we note that rules of contract interpretation favoring one party's meaning over another's apply only where the trial court is forced to make a choice among reasonable interpretations; they do not override evidence of the meaning intended by the parties. *USA Fertilizer, Inc.*, 120 Idaho at 274, 815 P.2d at 472. Where, as here, the magistrate finds an agreement in fact to create a condition precedent, it had no need to resort to additional rules of interpretation.

Hoff also cites several cases in which appellate courts declined to construe written contract provisions as creating conditions precedent.[8] In each of those cases, however, the ruling court found there to be no evidence of intent on the part of the contracting parties to create a condition precedent, and on that basis, the court refused to construe the contract to give effect to such a term. In contrast, the magistrate in the instant case found that the parties actually had intended to create such a condition. Accordingly, the court must give legal effect to that intent. *See Bischoff v. Quong–Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct.App.1987).

Hoff further urges that the condition precedent should be construed as a term affecting only the *time* when payment is due, rather than a precondition to making payment at all. Hoff relies on *Schlueter v. Nelson*, in which the Supreme Court stated that,

> When the payment of a debt for services performed is conditioned on the happening of some event, *which is under the control of the obligor*, the event must happen or a reasonable time must elapse before payment becomes due, and the obligor must make some reasonable effort to cause the event to happen. Such a condition in a contract for payment of services does not mean that the debt can never become due until the event on which it is conditioned actually happens.

74 Idaho 396, 399, 263 P.2d 386, 387 (1953) (emphasis added). *See also Fish v. Fleishman*, 87 Idaho 126, 391 P.2d 344 (1964). Hoff argues that pursuant to *Schlueter* the magistrate was required to infer a "reasonable time" for Danner's performance, rather than finding his performance to have been totally excused.

We conclude that *Schlueter* is not controlling here, where the event triggering Danner's duty to perform, *i.e.*, Brink's payment for the materials, *was never in the control of Danner, the obligor*.[9] Furthermore, this lack of control over Brink's financial dependability was precisely the reason Danner initially insisted that Hoff tender priced-out invoices at the time of delivery. As communicated to Hoff, this requirement arose from Danner's apprehension that Brink was financially unstable and likely to fail to pay Danner at all, not merely from a concern that Brink might not pay on time. In view of the parties' purpose in creating the conditional term, the construction urged by Hoff seems unreasonable and does not reflect the parties' intent.

## V

We turn next to Hoff's argument that the condition precedent found by the mag-

**8.** *E.g., Statesville Roofing and Heating Co., v. Duncan*, 702 F.Supp. 118 (W.D.N.C.1988); *Pioneer Roofing v. Mardian Const. Co.*, 152 Ariz. 455, 733 P.2d 652 (App.1986); *Amelco Electric v. Donald M. Drake Co.*, 20 Wash.App. 899, 583 P.2d 648 (1978).

**9.** *See* Part VI, *infra,* discussing Danner's good faith obligation to use reasonable efforts to enforce payment from Brink.

istrate was satisfied when Brink paid Danner enough to discharge his account with Hoff. We observe that, to the extent Brink directed Danner to apply portions of his payments to the Hoff account, Danner did pay Hoff. However, Hoff claims that Danner was obligated to pay Hoff, in full, ahead of any other subcontractor, including those contractors who properly tendered their goods or services. We find nothing in the record to support such a preference right.

The purpose of the precondition was to relieve Danner of liability to Hoff if Brink ultimately failed to pay for the materials. It also is clear that the condition concerned only the materials Hoff delivered to Danner. Brink's payment, or nonpayment, for materials delivered or services performed by *other* subcontractors was not part of that agreement. In view of these circumstances, we conclude that it was not error for the magistrate to interpret the condition precedent to mean that Danner would be liable only if Brink paid *for those materials.*

## VI

[12] Finally, Hoff argues that Danner breached an affirmative duty to make reasonable efforts to collect from Brink. As a consequence of that breach, Hoff continues, Danner must be deemed to have waived the precondition to his duty to pay, and therefore must be held liable for the contract price. *See Fish,* 87 Idaho 126, 391 P.2d 344.

Danner's duty to exercise his best efforts to satisfy the condition is found at I.C. § 28-1-203, which provides that "every contract or duty within this act imposes an obligation of good faith in its performance or enforcement." However, this duty does not demand that Danner exhaust all possible means of collection, or that he pursue the most effective means of enforcing payment. Rather, it requires him to make *reasonable* efforts to secure payment from Brink. We note also that Hoff, too, is charged with the responsibility of taking reasonable steps to avoid its losses. *See W.L. Scott, Inc. v. Madras Aerotech, Inc.,*

103 Idaho 736, 653 P.2d 791 (1982); *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978). The reasonableness of parties' actions in mitigating losses chargeable to the other side presents a question for the trier of fact. *Casey v. Nampa and Meridian Irr. Dist.,* 85 Idaho 299, 379 P.2d 409 (1963).

In this case, the magistrate determined that Danner had used his "best efforts" to collect from Brink. First, Danner attempted to ascertain the prices for the materials over the telephone in order to immediately secure payment from Brink. With full knowledge of Danner's concerns, however, Hoff refused to comply. Nor did Hoff make any prompt effort to provide the information necessary to ensure payment; instead it billed Danner through its regular monthly billing cycle. Moreover, Danner did in fact succeed in collecting partial payment from Brink and made a corresponding partial payment to Hoff. In addition, Danner brought Brink to meet with Hoff and informed Brink of the potential filing of a materialman's lien against his property. As a consequence of this meeting, Brink paid Hoff an additional $300 towards the unpaid balance. Finally, the magistrate also found that Hoff recognized its lien rights against Brink, but failed to file within the statute of limitation.

These facts indicate that Danner attempted to collect from Brink, and was no less diligent than Hoff in pursuing the available means of securing payment. We therefore conclude that the magistrate's finding that Danner exercised his best efforts was not clearly erroneous, and affirm that finding on appeal.

## CONCLUSION

Having reviewed the record, including the transcript and exhibits admitted into evidence, we conclude that there exists sufficient evidence, albeit conflicting, to support an implied-in-fact agreement that Danner's duty to perform under the contract was conditioned on his receiving payment from Brink. We further conclude that this agreement comports with the provisions of the Uniform Commercial Code, and is en-

**48**

forceable. Finally, we uphold the magistrate's findings that Danner exercised reasonable efforts to satisfy the condition, and that the condition has not been, nor can it be, met. Because the condition precedent to Danner's duty to pay has failed, Danner cannot be held liable. Accordingly, we affirm the district court's order upholding the lower court's judgment entered in favor of Danner. Pursuant to I.C. §§ 12–120(1) and (3), respondent, Robert Danner, is entitled to an award of his costs on appeal, including reasonable attorney fees. The amount of this award is to be determined as provided in I.A.R. 40 and 41.

SWANSTROM, J., and WESTON, J. pro tem., concur.