**BIB AUDIO–VIDEO PRODUCTS, a/k/a Bib America, a division of Kelsey Industries, Inc., Respondent,**

v.

**HEROLD MARKETING ASSOCIATES, INC., d/b/a Graphics Technologies, Inc., Appellant.**

No. C7–93–2148.

Court of Appeals of Minnesota.

May 31, 1994.

Thomas O. Albers, Minneapolis, for appellant.

William Ray Joyce, James Sheehy, Faegre & Benson, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and HUSPENI and MULALLY, JJ.

## OPINION

EDWARD J. MULALLY, Judge.*

Appellant Graphics Technologies purchased goods from respondent Bib Audio Video in October and November of 1992 and has failed to pay for the goods. Appellant asserts that the parties entered into an oral stock rotation agreement that permits appellant to return slow-moving merchandise. The district court granted summary judgment in favor of respondent on the basis that the parol evidence rule bars evidence of the alleged oral agreement. We affirm.

## FACTS

Appellant Graphics Technologies (Graphics) seeks relief from summary judgment ordering Graphics to pay Bib Audio–Video (Bib) for audio care products purchased by Graphics in October and November of 1992. As stated by the district court, the basic facts are not in dispute. Graphics admits that it agreed to buy the goods, admits that it re-

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ceived and accepted the goods, and admits that it has failed to pay for the goods.

On or about June 30, 1992, Graphics sent a purchase order to Bib. Bib filled the order in July and Graphics paid for the merchandise. This order is not in dispute.

In July 1992, Graphics obtained a $50,000 line of credit from Bib. The credit application provided that past due amounts receive the highest legal rate of interest and that Bib is entitled to attorney fees to collect past due amounts. This credit application was signed by Stephan Herold, owner of Herold Marketing Associates, Inc., d/b/a Graphics.

In October and November 1992, Graphics placed orders and accepted merchandise from Bib in five transactions. Each order was accompanied by an invoice describing the goods ordered, the quantity of goods, and the price. Each invoice also stated that the terms of the sale were "net 60"; provided for a 1–½% monthly finance charge on past due accounts; and stated "PLEASE PAY FROM THIS INVOICE. NO STATEMENT WILL BE SENT," and "NO RETURNS WITHOUT AUTHORIZATION."

On January 11, 1993, when some of the invoices were overdue, Graphics sent Bib a Request for Return Credit for $30,157.55 out of the $34,594.00 of merchandise purchased from Bib in July 1992. The request did not mention a stock rotation agreement. On January 18, 1993, Bib wrote Graphics that it would authorize the return of the merchandise if Graphics immediately sent a check for the difference between outstanding billings and the merchandise sought to be returned and prepaid the freight for the return merchandise. Graphics did not send Bib the amount due, and Bib sued to collect on the outstanding invoices.

On April 13, 1993, Bib moved for summary judgment. On April 30, 1993, Graphics moved to amend its answer, alleging that Bib had refused to honor an oral stock rotation agreement entered into prior to Graphics purchasing any products from Bib. Graphics claims that, based on the stock rotation guarantee, it is entitled to a $44,000.00 offset for merchandise currently on hand, or in the alternative, to $44,000.00 in breach of con-

tract damages. Bib denies that there was a stock rotation agreement and has not agreed to a return of all merchandise for credit.

The district court granted Bib summary judgment and awarded Bib $52,779.30 for the amount due plus interest, attorney fees and costs. Graphics appeals this judgment.

### ISSUES

1. Did the district court correctly grant summary judgment on the basis that the invoices sent by Bib to Graphics are the final expressions of the agreement and the parol evidence rule bars any evidence of a prior oral agreement that contradicts the written invoice terms?

2. Is evidence of a prior oral agreement that contradicts the written invoice allowed under the usage of trade exception to the parol evidence rule?

3. Is evidence of an oral condition precedent that contradicts the written invoice terms excluded by the parol evidence rule?

4. Did the district court properly deny Graphics' motion to amend its answer to include the existence of a prior oral agreement that contradicts the written invoice terms?

### ANALYSIS

*1. Parol Evidence Rule*

 "On appeal from a summary judgment, this court must determine (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law." *City of Va. v. Northland Office Properties,* 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). A material fact affects the result or outcome of the case depending on its resolution. *Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). The reviewing court views the evidence most favorable to the nonmoving party. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

 The parol evidence rule provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing

intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 336.1–205) or by course of performance (section 336.2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Minn.Stat. § 336.2–202 (1992). Whether a contract is completely integrated and not subject to variance by parol evidence is an issue of law. *Apple Valley Red–E–Mix v. Mills–Winfield Eng. Sales, Inc.*, 436 N.W.2d 121, 123 (Minn.App.1989), *pet. for rev. denied* (Minn. Apr. 26, 1989).

A determination of whether the written document is a complete and accurate "integration" of the terms of the contract is not made solely by an inspection of the writing itself, important as that is, for the writing must be read in light of the situation of the parties, the subject matter and purposes of the transaction, and like attendant circumstances. * * * It is a common-sense reading.

*Bussard v. College of Saint Thomas, Inc.*, 294 Minn. 215, 224–25, 200 N.W.2d 155, 161 (1972). The final expression of an agreement's terms can be embodied in a purchase order. *See Action Time Carpets v. Midwest Carpet Brokers*, 271 N.W.2d 36, 39 (Minn. 1978).

 The district court found no genuine issues of material fact precluding summary judgment because the only disputed question of fact was whether there was an oral stock rotation agreement. The district court also determined that such an oral agreement, if it did exist, could not be used to contradict the terms of the written invoices.[1] In determining that the invoices represent the final expression of the terms of the agreement, the district court relied on *Matthew Bender &*

*Co. v. Jaiswal*, 93 A.D.2d 969, 463 N.Y.S.2d 78, 79 (1983) (citing the same parol evidence rule as contained in Minn.Stat. § 336.2–202 (1992)). There, the buyer sought to introduce evidence of a prior oral agreement which allowed a return of textbooks if the buyer decided they were not useful; the court held that the invoices received by the buyer after the oral agreement represented the final written expression of the parties' agreement and excluded evidence of the prior agreement. *Id.; see also Polygram, S.A. v. 32–03 Enterprises, Inc.*, 697 F.Supp. 132, 135 (E.D.N.Y.1988) (evidence of a prior agreement could not be used to contradict clear terms of the invoices); *Shore Line Properties, Inc. v. Deer–O–Paints & Chemicals, Ltd.*, 24 Ariz.App. 331, 538 P.2d 760, 763 (1975) (invoices constitute the final expression of agreement as to the warranty and the trial court properly excluded evidence of a prior oral warranty); *Battista v. Radesi*, 112 A.D.2d 42, 491 N.Y.S.2d 81, 82 (1985) (sales invoice containing the parties' names and addresses, payment terms, the price and the merchandise's description constituted the final expression of the parties, which could not be contradicted by evidence of a prior agreement).

Graphics argues that the district court erred in concluding that the invoices Bib sent to Graphics were the final expressions of their agreement, contending that there can be no finality of agreement in a writing that is sent unilaterally by one party to the other, since terms contained in such a "form contract" have not been negotiated by the parties. In support of its position, Graphics cites *Compania Sud–Americana de Vapores v. IBJ Schroeder Bank & Trust Co.*, 785 F.Supp. 411 (S.D.N.Y.1992), and *Hoff Co. v. Danner*, 121 Idaho 39, 822 P.2d 558 (App. 1991), *pet. for rev. denied* (Idaho Jan. 24, 1992). Both of these cases, however, can be distinguished on their facts.

First, in *Compania Sud–Americana*, the court found a genuine issue of material fact as to whether an oral agreement existed where over a thousand "confirmation slips"

[1] The issue before this court is whether the parol evidence rule prohibits evidence of the alleged oral agreement, and the statute of frauds, as referred to by the district court, is inapplicable.

passed between the parties. The court rejected the argument that the parol evidence rule applied to the confirmation slips because they did not reflect the terms of the single transaction to which both parties had orally agreed and showed only the terms at which each individual transaction contemplated by the oral agreement had been completed. *Compania Sud–Americana,* 785 F.Supp. at 432–33. In contrast, each invoice sent by Bib to Graphics was intended to represent the terms of that individual sale.

Similarly, in *Hoff,* the court determined that invoices were not the final expression of an agreement where there was an agreement to a term inconsistent with the invoice and that the buyer had signed the invoices only to verify receipt. *Hoff,* 822 P.2d at 563.

Here, the district court did not find that the parties in fact agreed to a stock rotation guarantee. Aside from Graphics' contention that it made sure that certain guarantees were in place before submitting purchase orders to Bib, there was no evidence indicating that the parties in fact agreed to a stock rotation arrangement. Further, there was evidence in the record indicating that the invoices were the final expression of the agreement: (1) Graphics' owner signed a credit application which clearly stated that Graphics promised to "pay for all purchases in accordance with Bib's terms of sale," (2) Graphics never contested the invoices sent with each shipment of merchandise, and (3) Graphics acquiesced in the written expression of agreement when Graphics requested a return authorization from Bib and did not mention any stock rotation agreement. Because the invoices stated "NO RETURNS WITHOUT AUTHORIZATION" and this term is not ambiguous, a stock rotation agreement that allows returns contradicts the language of the contract. Therefore, because the invoices sent by Bib to Graphics were the final expression of their agreement and the evidence of any prior agreement that contradicts the written invoice terms was properly excluded, we conclude that the district court properly granted summary judgment.

### 2. Usage of Trade

■ Graphics next argues that the district court erred by not admitting evidence of the oral agreement under the "usage of trade" exception to the parol evidence rule. Minn. Stat. § 336.1–205(2) (1992) provides:

A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.

*Id.* Usage of trade evidence may explain or supplement an agreement's written terms. Minn.Stat. § 336.2–202 (1992).

Below, Graphics argued that it was their standard "course of dealing" to include stock rotation agreements in all sales transactions, and stated that such agreements are the "normal trader usage in this business." The district court rejected Graphics' course of dealing argument, finding that Graphics did not allege a sequence of previous conduct between the parties for the court to consider. We agree with the district court that the course of dealing exception is inapplicable. Further, we conclude that evidence of the alleged oral agreement may not be admitted under the usage of trade exception to the parol evidence rule. Usage of trade is only allowed to explain or supplement the written terms; it may not contradict such terms. Minn.Stat. § 336.2–202. Graphics' assertion that the parties had a stock rotation agreement does not establish that such agreements are used industry-wide. Therefore, evidence of the alleged oral agreement is not admissible under a usage of trade theory.

### 3. Condition Precedent

■ Graphics contends that the stock rotation agreement was a condition precedent to Graphics' performance. A condition precedent is "any fact or event subsequent to the making of a contract, which must exist or occur before a duty of immediate performance arises under the contract." *National City Bank of Minneapolis v. St. Paul Fire & Marine Ins. Co.,* 447 N.W.2d 171, 176 (Minn. 1989). If the condition precedent then does not occur, there can be no breach of contract. *Id.*

Here, the district court rejected Graphics' condition precedent argument on the basis that even if there had been a stock rotation agreement, that agreement was inadmissible as an oral agreement. Because we conclude that the invoices represent the parties' final agreement, the evidence regarding the oral condition precedent was properly excluded by the parol evidence rule.

### 4. *Motion to Amend Answer*

 Upon receiving Bib's summary judgment motion, Graphics moved to amend its answer, which was denied by the district court. Leave to amend a pleading shall be freely given when justice so requires. Minn. R.Civ.P. 15.01. This court will not reverse the district court's decision in granting or denying a motion to amend, however, unless the court clearly abused its discretion. *Wagner v. Schwegmann's So. Town Liquor*, 485 N.W.2d 730, 733 (Minn.App.1992), *pet. for rev. denied* (Minn. July 16, 1992). A denial of a motion to amend is proper when the movant fails to establish evidence to support the movant's claims. *Davis v. Midwest Discount Securities*, 439 N.W.2d 383, 388 (Minn. App.1989).

Graphics' amended answer included a counterclaim which alleged an oral stock rotation agreement existed and that the stock rotation agreement entitled Graphics to an offset. Since the parol evidence rule bars admission of the alleged oral agreement, the district court properly denied Graphics' motion to amend its answer.

Graphics also argues that leave to amend is proper because its claim involves fraud and misrepresentation. Although Graphics acknowledges that it has not specifically alleged fraud or misrepresentation, Graphics claims that it is clear from the facts before the district court that the elements constituting misrepresentation exist. However, the failure to raise the issue in the district court precludes Graphics from arguing reversal based on alleged fraud and misrepresentation. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

### DECISION

The district court properly granted summary judgment because the parol evidence rule bars evidence of the alleged oral stock rotation agreement that contradicts the written invoice terms.

**Affirmed.**